J-S95032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.J.M.-B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., Father | : | No. 2463 EDA 2016 |

Appeal from the Decree July 25, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court, at No(s): CP-51-AP-0000603-2016,
CP-51-DP-0001671-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M.M.-B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., Father | : | No. 2464 EDA 2016 |

Appeal from the Decree July 25, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court, at No(s): CP-51-AP-0000604-2016,
CP-51-DP-0001670-2014

BEFORE: STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED FEBRUARY 13, 2017**

D.M. ("Father") appeals from the Decrees granting the Petitions filed

by the Department of Human Services ("DHS") to involuntarily terminate his

parental rights to his minor children, S.M.M.-B. (d/o/b 10/9/06) and

S.J.M.-B. (d/o/b 12/3/08) (collectively "Children"), pursuant to 23 Pa.C.S.A.

§ 2511(a)(1), (2), and (b), and changing Children's permanency goal to adoption.[1]  We affirm.

The trial court set forth the relevant underlying facts in its Opinion, which we adopt for the purpose of this appeal.  *See* Trial Court Opinion, 10/16/16, at 2-10.[2]

Following the hearing on the Petitions to terminate, the trial court entered Decrees terminating Father's parental rights.  Father filed timely Notices of Appeal and Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statements.  This Court consolidated the appeals.

On appeal, Father raises the following questions for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Father,] pursuant to 23 Pa.C.S.A. [§] 2511(a)(1)[,] where [F]ather presented evidence that he met his [Family Service Plan ("FSP")] goal and tried to perform his parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Father,] pursuant to 23 Pa.C.S.A. [§] 2511(a)(2)[,] where [F]ather presented evidence that he has remedied his situation by taking violence prevention and a drug and alcohol treatment program[s, and] Father has the present capacity to care for [C]hildren[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Father,] pursuant to 23 Pa.C.S.A. [§] 2511(b)[,] where evidence was presented that established [C]hildren had a parental bond with [Father] prior

---

[1] The trial court also terminated the parental rights of Children's mother, T.B.  *See* Trial Court Opinion, 10/18/16, at 1.  T.B. did not appeal the Decrees.

[2] DHS filed the Petitions for Involuntary Termination of Parental Rights on July 7, 2016.

>to his incarceration and continue this bond through phone contact and letters[?]

Father's Brief at 7.

We review an appeal from the termination of parental rights in accordance with the following standard:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id*. (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If the competent evidence supports the trial court's findings,

"we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa. Super. 2003).

Satisfaction of any one subsection of section 2511(a), along with consideration of Section 2511(b), is sufficient for the involuntary termination of parental rights. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Father's parental rights based upon section 2511(a)(1) and (b), which state the following:

**§ 2511. Grounds for involuntary termination.**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. … [P]arental duty is best understood in relation to the needs of a child. … [T]his court has held that the parental obligation is a positive duty[,] which requires affirmative performance. This affirmative duty … requires a continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In the Interest of J.T.*, 983 A.2d 771, 776-77 (Pa. Super. 2009) (internal quotations and citations omitted); *see also In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

With regard to incarceration and the preservation of parental rights, we have stated the following:

[I]ncarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; however, an incarcerated parent's responsibilities are not tolled during [her] incarceration. … [P]arental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of [his] ability, even in difficult circumstances.

*In the Interest of C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (citations omitted); *see also In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012).

Further,

[a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

In his first claim, Father contends that the trial court erred in granting the termination Petitions because DHS did not establish, by clear and convincing evidence, that his parental rights should be terminated under Section 2511(a)(1). Father's Brief at 12-13. Father argues that he never relinquished his parental rights, or refused to perform his parental duties. *Id*. at 14. Father asserts that he met his FSP goal of maintaining contact with Children. *Id*. at 13. Father claims that he asked for prison visits, but that he was never afforded a visit. *Id*. Father further claims that he had telephone contact with Children. *Id*. Father also argues that he has completed drug and alcohol treatment and violence prevention programs in prison. *Id*.

The trial court found that there was clear and convincing evidence to support the termination of Father's parental rights under section 2511(a)(1). *See* Trial Court Opinion, 10/16/16, at 12; *id*. at 8-10 (wherein the trial court set forth a summary of the evidence presented at the termination hearing). Specifically, the trial court pointed out that the credible testimony of Kimberly Walker ("Walker"), the caseworker assigned to this case, indicated that Father had not complied with his FSP objectives, only had contact with Children in May 2016, and that Father had made no effort to be involved in Children's lives. *See id*. at 10-12. Further, the trial court found Father's testimony regarding his contacts with Children to be incredible. *See* Trial Court Opinion, 10/16/16, at 12.

In the instant matter, the evidence demonstrates that Father did not provide for the needs of Children, and has made minimal efforts to establish a relationship with them. *See In re Adoption of S.P.*, 47 A.3d at 828 (stating that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child.") (citation omitted); *see also In re G.P.−R.*, 851 A.2d 967, 976 (Pa. Super. 2004) (stating that "[i]t is incumbent upon a parent[,] when separated from his child[,] to maintain communication and association with the child. This requires an affirmative demonstration of parental devotion, imposing upon the parent the duty to exert himself, to take and maintain a place of importance in the child's life.").

Furthermore, the fact that Father was in prison did not excuse his failure to perform his parental duties. *See In re Adoption of S.P.*, 47 A.3d at 828 (stating that the trial court may consider a parent's incarceration in ruling on a termination petition). After our careful review of the trial court's application of the law to the facts of this case, we will not disturb the trial court's findings that Father failed to perform his parental duties with regard to Children for a period of at least six months immediately preceding the filing of the Petition. *See In re B., N.M.*, 856 A.2d at 858 (concluding that father showed a settled purpose of relinquishing his parental rights where he sat idle for most of child's life, and that father's wish to not have his "parental rights terminated was insufficient to protect those rights without

acting affirmatively to foster a parental relationship with [c]hild during his incarceration."). Thus, the trial court's determinations regarding section 2511(a)(1) are supported by competent, clear and convincing evidence in the record.

Regarding section 2511(b), the trial court inquires whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005); *see also In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*.; *see also In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (stating that "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."). In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d at 1121. Finally, although the focus in terminating parental rights under section 2511(a) is on the parent, it is on the child under section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*); *see also In re Z.P.*, 994 A.2d at 1125

(stating that, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.").

Father contends that the trial court erred in determining that termination served Children's best interests under section 2511(b). Father's Brief at 15-16. Father argues that Children had a relationship with him prior to his incarceration, and that he attempted to continue that bond through phone calls and letters. *Id*. at 15. Father asserts that there was no evidence presented demonstrating a lack of bond, as the caseworker never supervised a visit with Father. *Id*.

Here, the trial court found that the evidence demonstrated, by clear and convincing evidence, that Children have no bond with Father. *See* Trial Court Opinion, 10/16/16, at 13; *see also* N.T., 7/25/16, at 12-14 (wherein Walker testified that Children had minimal contact with Father, that Children do not ask for Father, and that Children would not be harmed by the termination of Father's parental rights); *id*. at 13 (wherein Walker stated that Children were safe and their needs were being met by the resource home). The trial court's determination that Father cannot provide for Children's needs and welfare, and that their best interests are served by the termination of Father's parental rights, is supported by competent, clear and convincing evidence in the record. *See In re K.K.R.-S.*, 958 A.2d 529, 535-36 (Pa. Super. 2008) (stating that where no clear bond between the parent and the subject child was apparent, the county children and youth

agency was not required to prove the absence of a positive bond); ***In re***
***J.L.C.***, 837 A.2d 1247, 1249 (Pa. Super. 2003) (stating that parent must put himself in a position to assume daily parenting responsibilities so that he could develop a bond with child).  We, therefore, conclude that the trial court did not abuse its discretion in terminating the parental rights of Father under section 2511(b).[3]

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2017

---

[3] Father failed to challenge the goal change in his appellate brief.  Thus, he waived any challenge to the goal change.

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
IN THE COURT OF COMMON PLEAS

| | |
|---|---|
| IN THE INTEREST OF: | : FAMILY COURT DIVISION |
| | : JUVENILE BRANCH |
| | : |
| S.J.M-B., a Minor | : CP-51-AP-0000603-2016/CP-51-DP-0001671-2014 |
| d/o/b: 12/03/2008 | : |
| | : |
| | : |
| S.M.M-B., a Minor | : CP-51-AP-0000604-2016/CP-51-DP-0001670-2014 |
| d/o/b: 10/19/2006 | : |
| | : Superior Court No. 2463 EDA 2016; |
| Appeal of: | : 2464 EDA 2016 |
| D.M., Father | : CONSOLIDATED |

**O P I N I O N**

## INTRODUCTION

D.M., ("Father"), Appeals from the Decree and Orders entered by this Court on July 25, 2016, granting the Petition to Involuntarily Terminate Father's Parental Rights to his two minor male Children: S.J.M-B., ("Child"), born on December 3, 2008, and S.M.M-B., ("Child"), born on October 19, 2006, and changing the Children's Permanency Goal to Adoption, filed by the Department of Human Services ("DHS") on July 7, 2016, and served on all parties.

After a full Hearing on the merits, this Court found that clear and convincing evidence was presented to terminate the parental rights of both Father and Mother. Mother did not appeal this Court decision.

1

In response to the Order of July 25, 2016, terminating his parental rights, Father, by and through his counsel, filed a Notice of Appeal with Statement of Matters Complained of on Appeal on July 28, 2016.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In his Statement of Matters Complained of on Appeal, Father raises the following issues:

a.  The Trial Court erred and/or abused its discretion by entering an order on July 28, 2016 involuntarily terminating the parental rights of Father, D.O.M. More specifically, the Trial Court abused its discretion as substantial, sufficient and credible evidence was presented at the time of trial which would have substantiated denying the Petition for Goal Change Termination. The City has failed to meet its burden for termination by clear and convincing evidence under 23 Pa.C.S.A. §2511(a)(1), (2), (5), and (8) because Father presented evidence that he had substantially met his FSP goals and thereby remedied his situation. Additionally, Father was not provided reasonable efforts to reunite with his children.

b.  The Trial Court erred and/or abused its discretion by terminating the parental rights of Father, pursuant to 23 Pa.C.S.A. §2511(b) where DHS failed to prove by clear and convincing evidence that involuntary terminating his parental rights best served the emotional needs and welfare of his children.

## PROCEDURAL HISTORY

On July 12, 2014, the Department of Human Services (DHS) received a Child Protective Services (CPS) Report alleging that on July 09, 2014, seven-year-old S.M.M-B. was observed with two black eyes; that he stated the injuries had been caused by his Mother, T. B.; that she had hit him in the past with extension cords, shoes, and her hands;

2

and that the Child was taken to St. Christopher's Hospital, where his evaluation revealed significant old injuries to his arms, legs, and shoulder. The report alleged that on July 9, 2014, Mother had telephoned the Children's maternal grandfather, J.B., and asked him to care for S.M.M-B.; that J.B. had not been in contact with Mother in over one year; and that Mother later demanded that J.B. return S.M.M-B. to her care. The report also alleged that S.M.M-B. appeared malnourished; that he stated that Mother withdrew him from school and he failed the first grade; that he ate food from the garbage because Mother did not feed him properly; and that he was fearful to return to the care of Mother. There were allegations of domestic violence between Mother and her paramour, R.J.; that Mother and her two Children resided in a rooming house with R.J.; that Mother was unable to provide the basic needs of S.M.M-B. and S.J.M-B.; that Mother used extensive physical discipline as a form of punishment; that Mother was unable to provide an explanation for the old injuries that S.M.M-B. had sustained; and that R.J. has a history of physical and sexual abuse of his Children. The report was determined as valid. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"a").

On July 12, 2014, DHS went to St. Christopher's Hospital and met with S.M.M-B., who confirmed the allegations of the report. S.J.M-B. was examined at St. Christopher's and he was found to have old bruising. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"b").

On July 12, 2014, DHS visited the home of Mother and learned that she resided with R.J. and the Children in one room and that the Children shared an inflated mattress. Mother admitted that she used physical discipline on the Children. Mother agreed that

3

S.J.M-B. could reside with J.B., Maternal Grandfather, through a family arrangement. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"c").

On July 14, 2014, DHS completed clearances and determined that J.B. was not an appropriate caregiver for the Children. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"d").

On July 14, 2014 DHS obtained an Order of Protective Custody (OPC) for both Children and placed them in the care of their Maternal Great Grandmother, V.B. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"e").

During the 2013-2014 school year, S.M.M-B. had 88 unexcused absences and he had last attended school in February 2014. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"f").

S.J.M-B. had been enrolled at Kencrest until Mother removed him from school in April 2014. The Child attended the school for approximately two weeks after he was enrolled. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"g").

A Shelter Care Hearing was held on July 16, 2014, before the Honorable Kevin M. Dougherty. The Court found that legal custody of both Children would transfer to Philadelphia Department of Human Services. The Children's placement to remain with family. (Shelter Care Order, 7/16/2014).

4

D.M. is the Father of both Children. The whereabouts of Father were unknown to DHS at the time. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"i").

DHS later learned that Father was incarcerated at State Correctional Institution (SCI) Laurel Highlands on multiple counts of drug possession related charges. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"j").

An Adjudicatory Hearing was held on July 24, 2014 before the Honorable Allan L. Tereshko. The Court found legal custody of the Children remains with DHS, and the Dependent Children are to be placed by DHS in Foster Care. Mother to have supervised visits at the Agency. Children to be referred to DHS Educational Center. Children and Mother referred to BHS for consultation and evaluation. DHS to explore family and friends as possible placement resources. Children may be moved by agreement of DHS and Child Advocate prior to the next court date. (Order of Adjudication and Disposition—Child Dependent, 7/24/2014).

On August 22, 2014, Community Umbrella Agency (CUA)-Wordsworth held a Single Case Plan (SCP) Meeting. The goal for the Children was "Stabilize Family." The parental objectives established for Mother were to: 1) participate in parenting classes at the Achieving Reunification Center (ARC); 2) participate in anger management classes through ARC; 3) attend the Behavioral Health System (BHS) for evaluation and follow all recommendations; 4) attend weekly supervised visits with her Children; 5) interact with resource parent and CUA-Wordsworth to participate in the Children's medical appointments and school meetings. The parental objectives established for Father were

5

to: 1) ensure that Father is able to participate in services provided to the Children. Mother participated in the SCP Meeting. Father failed to participate in the SCP Meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"k").

A Permanency Review Hearing was held on October 23, 2014 before the Honorable Kevin M. Dougherty. The Court found the legal custody of the Children shall remain with DHS. Placement of the Children remains in Foster Care. Status Quo, Continuance Granted. (Permanency Review Order, 10/23/2014).

A Permanency Review Hearing was held on January 22, 2015 before the Honorable Allan L. Tereshko. The Court found the legal custody of the Children shall remain with DHS. Placement of the Children remains in Foster Care. Father is to have one visit at the prison. Children to attend Dunbar consistently. (Permanency Review Order, 1/22/2015).

On April 3, 2015, the Community Umbrella Agency (CUA) held a Single Case Plan (SCP) Meeting. The parental objectives for Father were to: 1) ensure that Father is able to participate in services provided to the Children. Father did not participate in the SCP Meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"n").

On April 16, 2015, a Permanency Review Hearing was held before the Honorable Margaret Theresa Murphy. The Court ordered legal custody of the Children remains with DHS. Placement of the Children shall remain in Foster Care. CUA to explore supervised visits for Father at the Prison with Children's therapist. Therapist to provide written progress reports. (Permanency Review Order, 4/16/2015).

6

A Permanency Review Hearing was held on July 7, 2015 before the Honorable Allan L. Tereshko. The Court found the legal custody of the Children shall remain with DHS. Placement of the Child remains in Foster Care through Methodist. Children doing well, receives services through Dunbar. Father remains incarcerated. (Permanency Review Order, 7/07/2015).

A Permanency Review Hearing was held on October 8, 2015 before the Honorable Margaret Theresa Murphy. Legal custody of the Children remains with DHS. The Children remain in Foster Care through Methodist. Children doing well through services at Dunbar. S.M.M-B. receives STS services in school. ACS to subpoena S.J.M-B.'s therapist from Dunbar for next court date. (Permanency Review Order, 10/08/2015).

On November 4, 2015, CUA-Wordsworth held a revised SCP Meeting. The goal for the Children was "Return to Parent". The parental objectives for Father were the same as the previous SCP. Father did not participate in SCP Meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"r").

A Permanency Review Hearing was held on January 4, 2016, before the Honorable Allan L. Tereshko. Legal custody of the Children remains with DHS. The Children remain in Foster Care through Methodist. CUA to make outreach to Father to explore whether Father will sign for S.J.M-B.'s medication. CUA to follow up to ensure S.M.M-B. has eyeglasses, and receives STS services in school. Both Children attend Dunbar for family therapy. (Permanency Review Order, 1/04/2016).

A Permanency Review Hearing was held on March 21, 2016 before the Honorable Allan L. Tereshko. Legal custody of the Children remains with DHS. The

7

Children remain in Foster Care through Methodist. The Children receive services through Dunbar, and both attend McKinley Elementary School. The Children have been approved for STS services through CCTC. CUA to perform PLS on Father. (Permanency Review Order, 3/21/2016).

On June 1, 2016, CUA-Wordsworth held a revised SCP Meeting. The parental objectives for both parents were the same as the previous SCP. Father failed to participate in the SCP Meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 7/07/2016, ¶"v").

## TERMINATION HEARING

On July 25, 2016, this Court held a Goal Change/Termination Hearing and heard testimony on DHS's Petition to Terminate Father's Paternal Rights as to his Children, and Change the Permanency Goal to Adoption. Father was present and represented by his attorney. (N.T. 7/25/2016, p.6 at 7-8).

The Assistant City Solicitor, Caitlyn Dunston's first witness was Kimberly Walker, CUA Case Worker, Wordsworth, who was assigned this case in July 2014. She testified the Children were removed from Mother's care because of abuse and neglect. At that time, Father was incarcerated and to the present continues to be incarcerated. (N.T. 7/25/2016, p.8 at 17-25; p.1-17).

Ms. Walker testified her agency made a Single Case Plan (SCP) for Father after the Children were adjudicated in July 2014. Father's objectives were: 1) to make telephone and written contact with the Children, and 2) have supervised visits at the

8

prison. She testified she sent Father a letter and he wrote back to acknowledge receipt of the letter. (N.T. 7/25/2016, p.9 at 21-25; p.10 at 1-18).

Ms. Walker testified Father contacted the Children in May 2016 through letters and telephone calls. Although the Court ordered Father to have supervised visits in prison, letters and telephone calls were recommended by the Children's therapist. The therapist has not recommended any other type of communication. At this point, she testified Father is not in a position to reunify with his Children. (N.T. 7/25/2016, p.11 at 7-25; p.12 at 1-5, 13-15).

Ms. Walker opined the Children would not suffer irreparable harm if the Father's parental rights were terminated because they have only minimal contact with him and are not bonded. The Children are currently placed at Methodist and she saw them July 15, 2016 and they are safe with their needs being met. (N.T. 7/25/2016, p.13 at 1-15).

On cross examination by Lisa Visco, attorney for Father, Ms. Walker testified the Court ordered one visit for the Children at the prison, however that was modified to mail and telephone contact in January 2015. The communication by Father with his Children did not take place until May 2016. (N.T. 7/25/2016, p.15 at 1-25).

Father, D.M., was next to testify. He stated he was arrested April 16, 2013, and the Children lived with their Mother at that time, although he provided support for them. He testified he is incarcerated for a drug charge, possession with intent to deliver, and his earliest release date is July 25, 2019. He noted he requested visits with his Children in late 2014 or early 2015, and later had contact with them by letters and telephone. (N.T. 7/25/2016, p.18 at 5-25; p.19 at 1-25; p.20 at 1-8).

9

Father further testified he completed therapeutic community and violence prevention programs while incarcerated. He noted he does not want his parental rights terminated and would like his Mother, R.M. to care for his Children. (N.T. 7/25/2016, p. 21 at 19-25; p.22 at 1-7).

On cross-examination by Kathleen Kinese, the Child Advocate, Father admitted he did not write letters to his Children but preferred telephone calls, and made over 50 calls to his Children. Further on cross-examination, when told the current foster parent indicated Father had not called his Children until May 2016, he admitted that was correct. (N.T. 7/25/2016, p.25 at 2-15).

## STANDARD OF REVIEW AND LEGAL ANALYSIS

In reviewing an appeal from an order terminating parental rights, the Superior Court adheres to the following standard: [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 9 A.3d 1179, 1190 (Pa. 2010) If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; R.I.S., [36 A.3d 567, 572 (Pa. 2011).

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for

10

termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted). In re Adoption of C.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

## A. The Trial Court Properly Found the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Father's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2),[1]

---

[1] 1(a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

11

This Court found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2).

After hearing the credible testimony of the CUA Case Manager, the Court found by clear and convincing evidence that her observations and conclusions regarding Father's non-compliance with the FSP objectives, and lack of contact with his Children, until two months before the hearing, was indicative of his lack of a parental bond.

The Court found Father's testimony regarding his contact with his Children incredible and Father, himself, admitted he did not write letters and instead resorted to telephone calls only beginning in May 2016.

### B. Trial Court Properly Found that Termination of Father's Parental Rights was in the Children's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).[2]

After the Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the children pursuant to 2511(b) In re Adoption of C.L.G., 956 A2d 999 (Pa.Super 2008). In terminating the rights of a parent, the Court 'shall give primary consideration to the development, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). One major aspect of the needs and welfare analysis

---

[2] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

12

concerns the nature and status of the emotional bond between parent and child. In re T.S.M., 71 A3d.

The testimony provided this Court with clear and convincing evidence that Father was not bonded to his Children, and termination of his parental rights would be in the best interest of the Children.

## CONCLUSION

As discussed above, the Trial Court found that Father's testimony was not credible regarding his communication with his Children. On the contrary, credible testimony was presented by the Case Manager that Father failed to complete requirements. The Court was not persuaded that Father could or would resolve these issues in the near future.

This Court finds credible the testimony from the Agency worker that the Children would not suffer irreparable harm if Father's rights were terminated and termination of his parental rights would be in the best interest of the Children.

The Court concluded:

> Regarding Father, notwithstanding the eleventh hour attempt to create some relationship with these Children, he basically ignored their existence until May of 2016, evidence is clear that there is no parental bond. He has made no effort to create a parental bond. They were not in his care when they were taken into custody.
>
> Therefore, 2511(a)(1) and (2) are satisfied and 2511(b) is satisfied because there would be no irreparable harm in severing a relationship which does not in fact exist.

13

Father's rights are terminated. Having terminated both parents' rights the goal is now moved to adoption on both Children.

(N.T. 7/25/2016, p.58 at 6-20).

For the foregoing reasons, this Court respectfully requests that the Order of July 25, 2016 Terminating Father, D.M.'s Parental Rights and changing the Children's Permanency Goal to Adoption be AFFIRMED.

**BY THE COURT:**

_____
**ALLAN L. TERESHKO, Sr. J.**

Oct 18, 2016
**DATE**

14